UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                    Case Number 06-20585

v.                                       Honorable David M. Lawson

JERRY BLEWETT,

        Defendant.

_____/

## ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

Defendant Jerry Blewett has filed a motion asking the Court to reduce his sentence to time served under the authority of the compassionate release provision of 18 U.S.C. 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239. Blewett has served nearly all of his 165-month sentence from this Court for armed bank robbery, although he also is serving consecutive sentences imposed for other crimes by other judges. He argues that a sentence reduction is justified by his age (55) and medical conditions (hypertension, obesity, acid reflux, latent tuberculosis, allergies, chronic kidney disease, and borderline diabetes) coupled with the threat of infection with the novel coronavirus in the congregant confinement of a prison setting. The government concedes that Blewett's obesity is a medical risk factor that may amount to an extraordinary and compelling reason for release, but it maintains that he would be a threat to public safety if released. Although Blewett's obesity coupled with the threat of a COVID-19 infection may amount to "extraordinary and compelling reasons [to] warrant such a reduction," as section 3582(c)(1)(A)(i) requires, consideration of the factors in 18 U.S.C. § 3553(a) do not favor early release. Because Blewett has not demonstrated that immediate release is appropriate or that he qualifies for release under any other provision of section 3582(c)(1), the motion will be denied.

I.

Blewett was released from a federal sentence for bank robbery in September 2006. Less than two months later, he robbed two more banks. He pleaded guilty to two counts of bank robbery in violation of 18 U.S.C. § 2113(a). On May 14, 2007, the Court sentenced him to 165 months in prison, to be followed by three years of supervised release. Later the same month, Judge Gerald Rosen imposed a consecutive sentence of 24 months for violating supervised release conditions in another case. *United States v. Blewett*, No. 06-20645 (E.D. Mich. May 25, 2007). Blewett surrendered to the custody of the Bureau of Prisons on November 9, 2006, and he presently is confined at FCI Greenville, in Illinois, which is a medium-security facility that houses around 1,230 inmates.

In August 2008, shortly after the defendant entered federal custody, staff at USP Big Sandy (where the defendant originally was designated) found heroin and marijuana in his possession, and he was charged in the Eastern District of Kentucky with possessing contraband in prison. *United States v. Blewett*, No. 09-45 (E.D. Ky. Oct 15, 2009). He pleaded guilty, and Judge Amul Thapar sentenced the defendant to 45 months in custody, to run consecutive to the other federal sentences. Public records of the Bureau of Prisons (BOP) indicate that the defendant is scheduled to be released by the BOP on April 8, 2022. Blewett is 55 years old.

On July 21, 2020, Blewett submitted an administrative request for compassionate release to the warden at FCI Greenville. The warden did not respond. On November 4, 2020, Blewett filed a motion seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018. ECF No. 26.

The most recent data disclosed by the BOP indicates that there are 17 active coronavirus cases among inmates and 16 among staff at FCI Greenville. In addition, 755 inmates and 60 staff

members previously were diagnosed and now have recovered. Reports indicate that no inmates or staff have died from the virus. *See* https://www.bop.gov/coronavirus/.

II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)). "But that rule comes with a few exceptions, one of which permits compassionate release." *Ibid.* "The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). Or it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)). Blewett relies on subparagraph (i) of the statute. Under that provision, the Court can order a reduction of a sentence, even to time served, by following a procedure that the court of appeals has distilled into three steps. *First*, consider whether "extraordinary and compelling reasons warrant such a reduction." *Second*, determine if the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Third*, "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *United States v. Ruffin*, 978 F.3d 1000, 1004-06 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)).

The Sentencing Commission's policy statement to be considered under step two is found in U.S.S.G. § 1B1.13, which simply recites the statute. The commentary adds gloss, which does not have the force of law. *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (*en banc*) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it"). That has led the court of appeals in its evolving guidance on the subject to hold that district courts should dispense with step two when the motion for compassionate release comes from a prisoner and not the BOP. *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020) ("We now join the majority of district courts and the Second Circuit in holding that the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release.") (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)).

More recently, the court of appeals took the explanation a step further. In *United States v. Elias*, --- F.3d ---, No. 20-3654, 2021 WL 50169 (6th Cir. Jan. 6, 2021), the court ascribed Congress's amendment of section 3582(c)(1) to the BOP's "rare[]" exercise of its power to move for sentence reductions, that "the program was plagued by mismanagement," and that "the BOP 'ha[d] no timeliness standards for reviewing . . . requests.'" 2021 WL 50169 at *1 (quoting *United States v. Brooker*, 976 F.3d 228, 231-32 (2d Cir. 2020)). It reaffirmed *Jones*'s holding "that § 1B1.13 is not an applicable policy statement for compassionate-release motions brought directly by inmates, and so district courts need not consider it when ruling on those motions." *Id.* at *2. It then held that "in the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts have discretion to define 'extraordinary and compelling' on their own initiative." *Ibid.*

A.

The government concedes that the request for release has been properly exhausted, so that threshold requirement for relief has been satisfied.

B.

Addressing the first element — extraordinary and compelling reasons — Blewett argues that his medical conditions expose him to an elevated risk of complications from the highly-contagious novel coronavirus. In *Jones*, the court of appeals noted that a prisoner may establish "extraordinary and compelling reasons" warranting early release either where he "has COVID-19 (because [the inmate] may suffer from serious long-term health problems and potentially may require treatment that he cannot receive [while in custody]), or where he does *not* have COVID-19 (because [other] medical issues put [him or her] at risk of contracting the virus)." *Jones*, 980 F.3d at 1106 n.6.

The defendant is justifiably concerned about the health risks posed by his incarceration. "The COVID-19 virus is highly infectious and can be transmitted easily from person to person. COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease, respiratory disease, diabetes, and immune compromise. If contracted, COVID-19 can cause severe complications and death. . . . [T]he Centers for Disease Control and Prevention ("CDC") recommends preventative measures to decrease transmission such as physical distancing, mask wearing, and increasing focus on personal hygiene such as additional hand washing." *Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020). "The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation. It presents a clear and present danger to free society for reasons that need no elaboration." *United States v. Ortiz*, No. 16-439, 2020 WL 3640582, at *2 (S.D.N.Y. July 6, 2020).

Moreover, "the crowded nature of federal detention centers presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread.  And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself.  For these reasons, in the past months, numerous [federal] courts . . . have ordered the temporary release of inmates held in pretrial or presentencing custody and, in more limited instances, the compassionate release of high-risk inmates serving federal sentences." *Ibid.*  (collecting cases; footnotes omitted).

It is widely recognized and publicly acknowledged that persons with certain medical conditions face an increased risk of severe consequences from potential COVID-19 infection. *United States v. Lassiter*, No. 17-232, 2020 WL 3639988, at *4 (D. Md. July 6, 2020) ("The risk factors include age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.") (citing Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness, Centers for Disease Control & Prevention (June 25, 2020), https://bit.ly/2WBcB16).  It is appropriate to consult the CDC guidelines and other "scientific journal[s]" when determining whether extraordinary and compelling reasons exist. *Elias*, 2021 WL 50169, at *4.

Blewett's age, hypertension, allergies, acid reflux, borderline diabetes, and latent tuberculosis do not support a finding of extraordinary or compelling reasons for his release.  He is below the CDC's identified high-risk age of 65.  And although tuberculosis generally affects the lungs, the CDC has not recognized the condition as one that increases an individual's risk of severe COVID-19 infection.  Moreover, the defendant's tuberculosis appears to have been treated and controlled since early 2015.  Medical Records, ECF No. 28, PageID.202.  The CDC also does not recognize allergies or acid reflux high-risk conditions.

Blewett's "borderline diabetes" "does not denote a diagnosed diabetic condition, but instead indicates merely the presence of higher than normal blood sugar which may make it more likely that a person will develop Type 2 diabetes." *United States v. Simmons*, No. 18-20270, 2020 WL 4816199, at * 2 (E.D. Mich. Aug. 19, 2020) (citing WebMD: Types of Diabetes, https://www.webmd.com/diabetes/guide/types-of-diabetes-mellitus).  And it is unclear how much of a role the defendant's hypertension may play.  The CDC states that individuals with hypertension "*might* be at an increased risk for severe illness from COVID-19." *People with Certain Medical Conditions*, *supra* (emphasis added). "Drilling down, though, that condition is grouped with 'serious heart conditions' that predispose a person to higher risks of complications. Also included are 'heart failure, coronary artery disease, congenital heart disease, cardiomyopathies, and pulmonary hypertension.'" *United States v. Watkins*, 2020 WL 5035111, at *4 (E.D. Mich. Aug. 11, 2020) (quoting *People with Certain Medical Conditions*, *supra*). Although the defendant has been diagnosed with "benign hypertension," he does not suggest that he suffers from pulmonary hypertension or any other types of heart disease.

Nevertheless, the government concedes that the defendant is obese, a condition that increases his risk of developing severe complications from a Covid-19 infection.  Blewett stands at about 5'10" and his weight ranged from 200 to 226 pounds, meaning that his body mass index (BMI) ranged from 28.7 to 32.5.  Medical Records, ECF No. 28, PageID.205.  Most recently, his BMI hovered around 32.5 in July 2020.  The CDC's guidelines advise that individuals who are obese (BMI of 30 or greater) are among those with the "strongest and most consistent evidence" of severe illness from COVID-19. *Scientific Evidence for Conditions that Increase Risk of Severe Illness*, Ctrs. for Disease Control and Prevention (Nov. 2, 2020), https://bit.ly/34aDRY6.  The government concedes that "Blewett has satisfied the first eligibility threshold for compassionate

release during the pandemic," in light of the heightened risk that Covid-19 poses to someone with obesity.  Response, ECF No. 34, PageID.257.

C.

Despite the defendant's satisfactory showing of an extraordinary medical risk, early release is not justified in this case because the relevant section 3553(a) factors weigh heavily against discharging him into the community.

The government insists that compliance with the Sentencing Commission's policy statement on compassionate release is mandatory, pointing to one line in section 1B1.13 that requires the prisoner to prove lack of dangerousness.  That argument, however, is a dead letter after the Sixth Circuit's decision in *Jones*, 980 F.3d at 1109 ("Until the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion.").

That is not to say that dangerousness is irrelevant.  It is a factor incorporated in section 3553(a), which must be "consider[ed]" before release for extraordinary and compelling reasons may be allowed.  *See* 18 U.S.C. § 3553(a)(2)(C) (requiring a sentencing court to consider "the need . . . to protect the public from further crimes of the defendant").  And any sentence reduction also must account for "the seriousness of the offense," the need "to promote respect for the law," and "afford adequate deterrence to criminal conduct."  *Id.* § (2)(A), (C).  These factors are to be considered together with the prisoner's circumstances to arrive at a conclusion that they are sufficiently extraordinary and compelling to justify a sentence reduction.

Blewett is a serial offender.  He has a nearly unbroken string of serious felonies since his first burglary conviction at age 18.  That was followed by convictions for attempted grand larceny

in 1988, assaultive conduct in 1994, two assault convictions in 1995, and two bank robberies in 1996 and 2000. He has committee four bank robberies overall, on a pace that was interrupted only by prison sentences. Following a 48-month sentence for his 1996 his bank robbery conviction, he was released to a halfway house to complete his sentence and promptly he escaped. When he was released from custody, and was on supervised release, he violated his terms of supervised release by using narcotics and was returned to prison for another six months.

Blewett committed his second bank robbery in Minnesota while he was on supervised release for the first one. And when he was on supervised release for that, he committed the bank robberies for which he is in prison now. And prison has not abated his criminal ways. While serving the present sentence, Blewett was caught in possession of heroin and was convicted of that crime as well. Once he was released to a half-way house, he escaped from that facility (his second escape offense). There are times when the "career offender" label, although technically accurate, is overwrought. This is not one of them.

Blewett's crimes committed in this case are serious. Although he was not armed at the time, Blewett robbed two banks while feigning the possession of a gun, threatening the tellers.

The Court determined at the time of sentencing that the 165-month prison sentence was necessary to achieve the goals of sentencing Congress identified in 18 U.S.C. § 3553(a). One of those goals — protection of the public — was paramount in this case. Blewett's prison conduct validates that concern. In addition to the foregoing, in 2008, the defendant was disciplined for possessing narcotics. In 2016, he was disciplined for possessing unauthorized items. Accordingly, the BOP considers the defendant to pose a high risk of recidivism.

The defendant took commendable steps in completing prison programming and earning an associate's degree. But even if the completion of that degree program can be viewed as

commendable, it does not alter the historical fact that the Court plainly imposed a sentence that was not greater than necessary to achieve congressional goals. Reducing the defendant's sentence would not promote respect for the law or provide a just punishment for the defendant's crime. Nor would it serve as a significant deterrent to others; to the contrary, it severely would undermine the goals of both specific and general deterrence, which is of particular concern with a defendant who has demonstrated his enterprising resourcefulness in flouting the law.

Consideration of the factors in 18 U.S.C. § 3553(a) weighs heavily in this case against granting any reduction in sentence, and those factors foreclose relief, even in light of the outbreak of COVID-19 at FCI Greenville. Although the defendant's obesity puts him at risk, his conduct both before his indictment and afterward in prison cast grave doubt on his inclination to be law abiding and conform to the norms of society. On similar facts, notwithstanding an inmate's demonstration of elevated medical risk, this and other federal courts readily have denied compassionate release motions by defendants who were convicted of serious drug crimes and had served less than half of their custodial terms. *E.g.*, *United States v. Lamar*, No. 18-20183, 2020 WL 7319431, at *4 (E.D. Mich. Dec. 10, 2020); *United States v. White*, No. 18-20183, 2020 WL 7240904, at *4 (E.D. Mich. Dec. 9, 2020); *United States v. Douglas*, No. 16-20436, 2020 WL 7225773, at *4 (E.D. Mich. Dec. 7, 2020); *United States v. Benge*, No. 12-59, 2020 WL 5845892, at *4 (E.D. Ky. Oct. 1, 2020); *United States v. Myers*, No. 18-20633, 2020 WL 4934343, at *3 (E.D. Mich. Aug. 24, 2020). There are no facts apparent in this record suggesting that a different outcome is warranted here.

III.

Blewett has exhausted his administrative remedies. However, he has not demonstrated that compassionate release under 18 U.S.C. 3582(c)(1)(A)(i) is justified.

Accordingly, it is **ORDERED** that the defendant's motion for compassionate release (ECF No. 26) is **DENIED**.

s/David M. Lawson<br>
DAVID M. LAWSON<br>
United States District Judge

Dated:   January 28, 2021